IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:15-CV-638-FL

| | | |
|---|---|---|
| GREGORY MAURICE LEE, *by and through his Guardian, LINDA SHELTON*, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF FAYETTEVILLE; HAROLD MEDLOCK, *individually and in his official capacity as City of Fayetteville Police Chief*; and JOHN DOES, *Police Officers of the City of Fayetteville whose identities are unknown to Plaintiff at this time*, | ) | ORDER |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on defendants' motion to dismiss for insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted, made pursuant to Federal Rules of Civil Procedure 12(b)(4), 12(b)(5), and 12(b)(6). (DE 21). Also before the court is plaintiff's motion for hearing, embedded within his response in opposition to defendants' motion to dismiss. (DE 29). The issues raised have been briefed fully and are ripe for ruling. For the reasons stated more specifically below, the court grants defendants' motion in part and denies it in part. Further, the court denies plaintiff's motion for hearing. Plaintiff shall have 90 days in which to effect proper service on the defendants remaining in this matter.

# BACKGROUND

On November 13, 2012, plaintiff allegedly was beaten by several unknown members of the police force of defendant City of Fayetteville ("Fayetteville"), and, as a result, was left with severe cognitive impairments. On November 9, 2015, plaintiff, through his guardian, Linda Shelton, filed this suit in the Cumberland County, North Carolina, Superior Court, against defendant Fayetteville; defendant Harold Medlock ("Medlock"), defendant Fayetteville's chief of police, in his individual and official capacities; and the unknown police officers, as "John Doe" defendants, also in their individual and official capacities. Against each defendant, plaintiff asserts claims for negligence and gross negligence under North Carolina law, as well as claims for excessive force, deliberate indifference, and violation of civil rights, pursuant to the Fourth and Fourteenth Amendments, as enforced by 42 U.S.C. § 1983. Plaintiff prays for punitive damages.

On December 7, 2015, defendants timely removed plaintiff's suit to this court, pursuant to 28 U.S.C. §§ 1441 and 1446, invoking this court's subject matter jurisdiction over plaintiff's § 1983 claims under 28 U.S.C. § 1331. On January 6, 2016, defendants Fayetteville and Medlock filed the instant motion to dismiss on behalf of themselves and the John Doe defendants. Therein, defendants argue that plaintiff's official capacity claims against defendant Medlock and the John Doe defendants should be dismissed because they are duplicative of plaintiff's claims against defendant Fayetteville. Further, defendants argue that plaintiff's punitive damages claim as to defendant Fayetteville should be dismissed because defendant Fayetteville is immune from imposition of punitive or exemplary damages.

In any event, defendants also argue that process improperly was served on defendant Fayetteville and defendant Medlock, in his individual capacity. With respect to defendant

2

Fayetteville, defendants argue that process was served improperly because the Cumberland County, North Carolina, Sheriff's Deputy (the "deputy") serving the complaint and summons failed to leave those papers with defendant Fayetteville's mayor, clerk, or city manager. As to defendant Medlock, defendants contend that process was served improperly where the deputy attempted to serve defendant Medlock at his place of employment, rather than his residence.

In addition, defendants contend that plaintiff's claims against the John Doe defendants individually must be dismissed. Defendants Fayetteville and Medlock argue, on behalf of the John Does, that plaintiff has failed to timely serve process on any police officer, and thus, that the 90 day service period, provided by Federal Rule of Civil Procedure 4(m), has expired. Defendants Fayetteville and Medlock further argue that plaintiff is not entitled to any extension of time in which to serve the John Doe defendants because, even if plaintiff learns the John Does' identities, his claims against them are time barred. In particular, defendants contend that any amendment to the complaint to drop the place-holder John Doe defendants in favor of actual, named individuals, would be barred by the statute of limitations and would not relate back to the complaint's original date of filing under Federal Rule of Civil Procedure 15(c).

## COURT'S DISCUSSION

A.      Standards of Review

1.      Rules 12(b)(4) and 12(b)(5)

A motion under Rule 12(b)(4) challenges the sufficiency of process, while a motion under Rule 12(b)(5) challenges the sufficiency of service of process. See Fed. R. Civ. P. 12(b)(4), (b)(5). "When the process gives the defendant actual notice of the pendency of the action, the rules . . . are entitled to a liberal construction" and "every technical violation of the rule or failure of strict

3

compliance may not invalidate the service of process." <u>Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.</u>, 733 F.2d 1087, 1089 (4th Cir. 1984). Nevertheless, "the rules are there to be followed, and plain requirements for the means of effecting service of process may not be ignored." <u>Id.</u> The plaintiff bears the burden of establishing that process properly has been served. <u>Dalenko v. Stephens</u>, 917 F. Supp. 2d 535, 542 (E.D.N.C. 2013); <u>see also</u> <u>Mylan Labs., Inc. v. Akzo, N.V.</u>, 2 F.3d 56, 60 (4th Cir. 1993) (holding the plaintiff must prove service of process if challenged).

      2.      Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." <u>Republican Party v. Martin</u>, 980 F.2d 943, 952 (4th Cir. 1992); <u>see also</u> <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243–44 (4th Cir. 1999). A complaint states a claim under 12(b)(6) if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u>

"Factual allegations must be enough to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.     Analysis

1.     Official Capacity Defendants

Defendants first move to dismiss the complaint against defendant Medlock and the John Doe defendants insofar as plaintiff asserts claims against them in their official capacities.  Defendants contend that plaintiff's official-capacity claims are duplicative of plaintiff's suit against defendant Fayetteville, where plaintiff seeks only monetary damages.

"[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself."  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  "While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent and in essence are suits against the entity."  Andrews v. Daw, 201 F.3d 521, 525 (4th Cir. 2001) (alterations and internal quotations omitted) (citing Graham, 473 U.S. at 165–66).  Where a plaintiff interposes a claim for damages against both a municipality and a municipal officer in her official capacity, the official-capacity claim properly is dismissed in favor of a single claim against the municipality.  See Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004); Williams v. Guilford Tech. Cmty. Coll. Bd. of Trustees, 117 F. Supp. 3d 708, 716 (M.D.N.C. 2015); Hicks v. Halifax Cty. Bd. of Educ., 93 F. Supp. 2d 649, 667 (E.D.N.C. 1999).  Thus, because plaintiff's official capacity claims seek only damages, they are duplicative of his claims against defendant Fayetteville and will be dismissed.

2.    Defendant Fayetteville

Defendants next move to dismiss plaintiff's claims against defendant Fayetteville for insufficient process and insufficient service of process, or, should the court determine that defendant Fayetteville properly has been served, defendants move to dismiss plaintiff's punitive damages claim against defendant Fayetteville.

a.    Service on Defendant Fayetteville

Defendants contend that plaintiff failed to serve the summons and complaint on the city's mayor, clerk, or manager, as is required by North Carolina law.  In support of their motion, defendants direct the court to the affidavit of Deanna Wiuff ("Wiuff"), an administrative assistant employed by defendant Fayetteville.  In her affidavit, Wiuff avers that on November 12, 2015, plaintiff employed a deputy to serve process on defendant Fayetteville's mayor, Nat Robertson, but, that the deputy left process with her because the mayor was out of the office.  (Wiuff Aff., DE 21-3, ¶¶3–5).

i.    Service Under North Carolina Law

When the deputy attempted to serve process on defendant Fayetteville, this case was pending before the Cumberland County Superior Court.  Accordingly, the sufficiency of plaintiff's attempted service is judged under North Carolina law.  See Fed. R. Civ. P. 81(c)(1); Wolf v. Green, 660 F. Supp. 2d 738, 745–46 (S.D. W. Va. 2009); see also Wallace v. Microsoft Corp., 596 F.3d 703, 706–07 (10th Cir. 2010); Lee v. City of Beaumont, 12 F.3d 933, 936–37 (9th Cir. 1993), overruled on other grounds, 533 F.3d 1087 (9th Cir. 2008).

Under North Carolina law, service may be made

Upon a city, town, or village by personally delivering a copy of the summons and of the complaint to its mayor, city manager or clerk; by mailing a copy of the summons

6

and of the complaint, registered or certified mail, return receipt requested, addressed to its mayor, city manager or clerk; or by depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the mayor, city manager, or clerk, delivering to the addressee, and obtaining a delivery receipt.

N.C. R. Civ. P. 4(j)(5), N.C. Gen. Stat. § 1–1A. Plaintiff's attempt to serve defendant Fayetteville through its mayor is invalid because the mayor never acknowledged receipt of process.[1] Under North Carlina law, the rule governing service of process on city officials is strictly construed, and, at minimum, requires the official acknowledge receipt of process at the time service is made. See Crabtree v. City of Durham, 136 N.C. App. 816, 819 (2000) (holding service valid where process server left process with city manager's assistant after the process server appeared before the city manager and "directed [his] attention [to the papers,] indicating to him that he was being served"); Johnson v. City of Raleigh, 98 N.C. App. 147, 149–50 (1990). Because the mayor was out of the office when the deputy attempted to serve process, he neither personally received process, nor did he acknowledge its receipt.

ii.      Service Under Federal Law

Defendants removed this case to this court on December 7, 2015. Because service had not been perfected at the time of removal, plaintiff was provided an additional 90 days in which to serve process on defendant Fayetteville. Fed. R. Civ. P. 4(m) & 81(c)(1); see also 28 U.S.C. § 1448. That 90-day service window began on the date of removal. See Fed. R. Civ. P. 81(c)(1); e.g., Rice v. Alpha Sec., Inc., 556 F. App'x 257, 260 (4th Cir. 2014); Wallace, 596 F.3d at 706–07; Motsinger v. Flynt, 119 F.R.D. 373, 376–77 (M.D.N.C. 1988). Plaintiff's 90-day window closed on or about March 8, 2016; he failed to serve process within the allotted time.

---

[1] There is no indication plaintiff ever attempted service either by mail or by use of a designated delivery service.

Generally, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant." Fed. R. Civ. P. 4(m). However, in lieu of dismissal, the court may "order that service be made within a specified time." Id. In addition, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Id. Under the circumstances of this case, the court will "order that service be made within a specified time" and grants plaintiff an additional 90 days in which to serve process on defendant Fayetteville.

Rule 4(m) vests in the court the power to extend time on its own, even where the plaintiff cannot show good cause. The commentary to the 1993 amendments to the Federal Rules of Civil Procedure (the "1993 amendments"), the set of amendments that enacted Rule 4(m) as it reads today, clearly evidences the committee's intent that the court be allowed "to relieve a plaintiff of the consequences of an application of this subdivision even if there is no good cause shown." Fed. R. Civ. P. 4(m), 1993 advisory committee notes. That the court is allowed to extend the plaintiff's time to effect service without a showing of good cause also is supported, if not explicitly confirmed, by Henderson v. United States, 517 U.S. 654 (1996). There, the Court observed that "Rule 4(m) . . . permits a district court to enlarge the time for service 'even if there is no good cause shown.'" Id. at 658 n.5 (quoting Fed. R. Civ. P. 4(m), 1993 advisory committee notes). In addition, the courts of appeals are in near unanimous agreement as to the same. See Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1132 (11th Cir. 2005) (collecting cases); see also id. at 1132 n.3 (noting district courts in circuits that have not addressed the question also have reached similar results).

8

It does not appear that the Fourth Circuit has squarely addressed this issue. Previously, the Fourth Circuit has held that "Rule 4(m) requires that if the complaint is not served within 120 days after it is filed, the complaint must be dismissed absent a showing of good cause." Mendez v. Elliot, 45 F.3d 75, 77–78 & n.* (4th Cir. 1995). However, in the present context, that holding lacks precedential authority, where the court's holding actually interprets Rule 4(j), Fed. R. Civ. P.(1991). See Bolus v. Fleetwood RV, Inc., 308 F.R.D. 152, 156 (M.D.N.C. 2015) (holding Mendez does not control proper interpretation of Rule 4(m), as enacted by the 1993 amendments); Velcovich v. Consol Energy, Inc., No. 5:07-CV-113, 2008 WL 4415428, at *8–9 (N.D. W. Va. Sept. 25, 2008) (same); see also, e.g., Lane v. Lucent Techs., Inc., 388 F. Supp. 2d 590, 596–97 (M.D.N.C. 2005) (holding that Henderson "undermines the continuing validity of Mendez's mandated dismissal absent a showing of good cause," and granting plaintiff an extension of time accordingly). But see, e.g., Chen v. Mayor & City Council of Balt., 292 F.R.D. 288, 291–92 (D. Md. 2013) (applying the Mendez good-cause rule, despite spending considerable space discussing the fact that Mendez was based on an "erroneous assumption").

In any event, even assuming that good cause is required, it exists here. The 1993 advisory committee notes state that "[r]elief may be justified . . . if the applicable statute of limitations would bar the refiled action." Fed. R. Civ. P. 4(m), 1993 advisory committee notes. As is discussed more fully below, the statutes of limitations have run on each of plaintiff's claims. Accordingly, dismissal in this instance would be a drastic consequence, where plaintiff could not refile. Moreover, the court finds that plaintiff's previous attempt to serve defendant Fayetteville demonstrates reasonable diligence on his part. Even though service was invalid, the fault is attributable to the deputy serving process, rather than dilatory motive on the part of either plaintiff or his counsel.

9

To the extent the court also must consider defendant's notice of the suit and potential prejudice accruing from the extension of time, neither consideration weighs in favor of dismissal. See, e.g., Coleman v. Milwaukee Bd. of Sch. Dirs., 290 F.3d 932, 934 (7th Cir. 2002). Defendant Fayetteville has actual knowledge of this suit. It only requests dismissal based on a technical failure, the fault for which appears to rests with the deputy serving process, not plaintiff. Defendant Fayetteville also will not be substantially prejudiced by an extension of time. Although the statute of limitations now has run on plaintiff's claims, plaintiff filed suit within the limitations period and, but for technical shortcomings in service of process, would have affected valid service before removal and within the time period allowed under North Carolina law.

For all these reasons, the court denies defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(4) and 12(b)(5). Plaintiff hereby is given an additional 90 days in which to serve defendant Fayetteville with process.

    b.  Punitive Damages

Defendants next move to dismiss plaintiff's plea for punitive damages against defendant Fayetteville. In support of their argument, defendants contend that defendant Fayetteville enjoys absolute immunity from punitive or exemplary damages under both North Carolina and federal law.

Municipalities are not subject to punitive damages in claims brought pursuant to 42 U.S.C. § 1983. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981). In addition, "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages" under North Carolina law. Long v. City of Charlotte, 306 N.C. 187, 208 (1982); accord Iglesias v. Wolford, 539 F. Supp. 2d 831, 841 (E.D.N.C. 2008). In general, North Carolina has no statute that waives a municipality's immunity for negligence or gross negligence, the state law

Case 5:15-cv-00638-FL   Document 31   Filed 03/30/16   Page 10 of 23

claims at issue here. Cf. Jackson v. Housing Auth., 316 N.C. 259, 262–65 (1986) (allowing punitive damages where negligence and gross negligence claims brought pursuant to North Carolina's Wrongful Death Act, N.C. Gen. Stat. § 28A–18–2). Accordingly, plaintiff's claim for punitive damages must be dismissed insofar as plaintiff prays for punitive damages against defendant Fayetteville.

      3.     Service on Defendant Medlock

Defendants next move to dismiss plaintiff's claims against defendant Medlock in his individual capacity for insufficient process and insufficient service of process. In particular, defendants move to dismiss plaintiff's claims against defendant Medlock where plaintiff failed to serve the complaint on defendant Medlock at his residence or usual place of abode, as is required by North Carolina law. In support of their motion, defendants direct the court to the affidavit of Heather De Ridder ("De Ridder"), a records clerk employed by defendant Fayetteville's police department. In her affidavit, De Ridder avers that the deputy tasked with serving process on defendant Medlock delivered the summons directed toward defendant Medlock to her, at the city police department. (De Ridder Aff., DE 21-1, ¶¶2–5).

      a.     Service Under North Carolina Law

When the deputy delivered defendant Medlock's process to De Ridder, this case was pending before the Cumberland County Superior Court. Again, the sufficiency of plaintiff's attempted service is judged under North Carolina law. See Fed. R. Civ. P. 81(c)(1); Wolf, 660 F. Supp. 2d at 745–46.

Under North Carolina law, service may be made upon a "natural person":

    a.      By delivering a copy of the summons and of the complaint to the natural person or by leaving copies thereof at the defendant's dwelling house or

usual place of abode with some person of suitable age and discretion then residing therein.

b.  By delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to be served or to accept service of process or by serving process upon such agent or the party in a manner specified by any statute.

c.  By mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee.

d.  By depositing with a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) a copy of the summons and complaint, addressed to the party to be served, delivering to the addressee, and obtaining a delivery receipt. . . .

e.  By mailing a copy of the summons and of the complaint by signature confirmation as provided by the United States Postal Service, addressed to the party to be served, and delivering to the addressee.

N.C. R. Civ. P. 4(j)(1). The deputy's attempt at personal service was contrary to law, where he failed to leave process at defendant Medlock's "dwelling house or usual place of abode." Under North Carolina law, leaving process at an individual defendant's place of business is improper. See Greenup v. Register, 104 N.C. App. 618, 620–21 (1990); Hall v. Lassiter, 44 N.C. App. 23, 25 (1979), disc. rev. denied, 299 N.C. 330 (1980). Thus, plaintiff's attempt to serve defendant Medlock at defendant Fayetteville's police department, his place of employment, was of no effect.[2]

b.  Service Under Federal Law

Defendants' December 7, 2015, removal to this court again gave plaintiff 90 days to complete service. See 28 U.S.C. § 1448; see also Fed. R. Civ. P. 4(m) & 81(c)(1); Wallace, 596 F.3d at 706–07. However, as before, plaintiff failed to effect service within that period. Nevertheless,

---

[2] There is no suggestion that plaintiff attempted service by any means other than personal delivery. Moreover, De Ridder avers that she is not defendant Medlock's agent for service of process. (De Ridder Aff. ¶4).

the court again affords plaintiff an additional 90 days in which to effect proper service on defendant Medlock in his individual capacity. In so holding, the court does not consider <u>Mendez</u> binding and thus the court need not find good cause. To the extent good cause is required, however, the court finds that good cause exists. Plaintiff attempted to serve process on defendant Medlock but, through no fault of his own, such service was invalid. Moreover, dismissal is a harsh consequence, where the statute of limitations has run as against defendant Medlock and dismissal would forever bar plaintiff's claims. Finally, defendant Medlock knows of the action and will not suffer substantial prejudice. Accordingly, defendant's motion to dismiss for insufficient process and insufficient service of process is denied.

        4.       Service on the John Doe Defendants

Defendants finally move to dismiss plaintiff's claims against the John Doe defendants. In opposition, plaintiff argues his failure to serve the John Doe defendants with process can be attributed to his ignorance as to their identities and suggests that the court should extend his time for service and allow this case to proceed to discovery so that he may ascertain their identities and serve them with process.

Plaintiff did not serve or attempt to serve the John Doe defendants prior to removal but, upon removal, had 90 days to serve them with process. <u>See</u> 28 U.S.C. § 1448; Fed. R. Civ. P. 4(m) & 81(c)(1); <u>Wallace</u>, 596 F.3d at 706–07. Plaintiff's 90 days elapsed on or about March 8, 2016, with no service made. Plaintiff is not entitled to an extension of time. The statutes of limitations have run on each of plaintiff's claims and, if plaintiff later attempted to amend his complaint to add individual defendants in the place of the John Doe defendants, such amendment would be futile, where it would not relate back to the date plaintiff filed his complaint.

a.      Statute of Limitations

Both plaintiff's common law claims and federal claims are barred by the relevant statutes of limitations.  Plaintiff's claims against the John Doe defendants did not toll the limitations period against the unknown individual police officers, whose actions underlie plaintiff's claims.  The three year limitations period applicable to both plaintiff's negligence and gross negligence claims, as well as his § 1983 claims, continuously accrued against those unknown, individual and expired on or about November 13, 2015.

Plaintiff's common law claims for negligence and gross negligence are subject to a three-year statute of limitations.  See N.C. Gen. Stat. § 1–52(5); Kaleel Builders, Inc.  v. Ashby, 161 N.C. App. 34, 45 (2003).  The limitations period began to accrue "when the wrong [was] complete." Fulton v. Vickery, 73 N.C. App. 382, 389–90 (2004).  Given the nature of plaintiff's allegations, "the wrong [was] complete" immediately following the alleged assault, and the limitations period ran on or about November 13, 2015.  Id.  Moreover, the three year statute of limitations was not subject to tolling.  Under North Carolina law the statute of limitations typically is tolled once a suit has been properly commenced against a defendant.  See Long v. Fink, 80 N.C. App. 482, 485 (1986) ("[T]he statute of limitations is tolled when suit is properly instituted, and it stays tolled as long as the action is alive.").

However, because plaintiff used the placeholder "John Doe," in lieu of the allegedly liable individual, tolling is not available in this case.  See, e.g., Huggard v. Wake Cty. Hosp. Sys., 102 N.C. App. 772, 775 (1991) (stating that "General Statutes § 1–166 does not by its terms contain a tolling provision. . . . While our legislature has the power to explicitly provide for such a tolling under the 'John Doe' statute, it has not done so"; listing other North Carolina statues with tolling

14

provisions); <u>Denny v. Hinton</u>, 110 F.R.D. 434, 436–37 (M.D.N.C. 1986) (finding "[n]o historical support . . . for the view that fictitious name pleading statutes, such as section 1–166, had a purpose of extending the time within which to bring actions"; concluding North Carolina legislature had not intended to use § 1–166 for such a purpose). <u>See generally</u> N.C. Gen. Stat. § 1–166 (allowing plaintiff to file suit against a fictitious defendant "[w]hen the plaintiff is ignorant of the name of a defendant"). This is consistent with the North Carolina Supreme Court's observation that a John Doe complaint cannot be filed "in the hope that at a later time the attorney filing the action may substitute the real name [of the John Doe] . . . and have the benefit of suspension of the limitation period." <u>Burcl v. N.C. Baptist Hosp., Inc.</u>, 306 N.C. 214, 225 n.7 (1982).

Nor does equitable tolling apply. Under North Carolina law, equitable tolling precludes a statute of limitations defense "when a party has been induced by another's acts to believe that certain facts exist, and that party 'rightfully relies and acts upon that belief to his detriment.'" <u>Jordan v. Crew</u>, 125 N.C. App. 712, 720 (1997) (quoting <u>Thompson v. Soles</u>, 299 N.C. 484, 487 (1980)); <u>accord</u> <u>Nowell v. Great Atl. & Pac. Tea Co.</u>, 250 N.C. 575, 579 (1959). Plaintiff does not indicate that defendants misled him as to the identity of the unnamed officers. Thus, equitable tolling does not save plaintiff's claims.

Plaintiff's § 1983 claims also are subject to the three-year statute of limitations. Section 1983 does not contain a statute of limitations, but "borrow[s]" its statute of limitations from the forum state's "most analogous" statute of limitations. <u>Owens v. Okure</u>, 488 U.S. 235 (1989). Generally, the "most analogous" statute of limitations is the one applicable to personal injury cases. Section 1983 also borrows the forum state's tolling principles. <u>See</u> <u>Hardin v. Straub</u>, 490 U.S. 536, 539 (1985). Under North Carolina law, the statute of limitations for plaintiff's § 1983 claims is three

years. Love v. Alamance Cty. Bd. of Educ., 757 F.2d 1504, 1506 & n.2 (4th Cir. 1985). Accrual of the statute of limitations, however, is a matter of federal law. Nat'l Advert. Co. v. City of Raleigh, 947 F.2d 1158, 1162 (4th Cir. 1991). Under Federal law, a cause of action accrues when the plaintiff "possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995).

The court's analysis of the statute of limitations with respect to plaintiff's § 1983 claims parallels the court's analysis of that issue with respect to plaintiff's common law claims. See Love, 757 F.2d at 1506 & n.2 (observing that § 1983 borrows North Carolina's three year statute of limitations). Compare Nasim, 64 F.3d at 955 (holding § 1983 cause of action accrues when the plaintiff "possesses sufficient facts abut the harm done that reasonable inquiry will reveal his cause of action"), with Fulton, 73 N.C. App. at 389 (limitations period begins to accrue "when the wrong is complete"). Given the nature of the conduct at issue, the statute of limitations began to accrue immediately. The three year period expired on or about November 13, 2015. In addition, the statute of limitations was not subject to tolling. See Hardin, 490 U.S. at 539 (§ 1983 borrows state tolling provisions); Jordan, 125 N.C. App. at 720 (holding equitable tolling applies "when a party has been induced by another's acts to believe that certain facts exist, and that party rightfully relies and acts on that belief to his detriment"); Huggard, 102 N.C. App. at 775 (holding N.C. Gen. Stat. § 1–166 is not a tolling provision).

      b.     Relation Back

Plaintiff's § 1983 claims against the John Doe defendants do not "relate back" to the date plaintiff filed his complaint. Under the "relation back" doctrine, a plaintiff may file a new complaint

16

and effectively circumvent the statute of limitations, because the amended complaint "relates back" to date on which the plaintiff filed his original complaint.

An amendment to a pleading relates back to the date of the original pleading when:

(A)     the law that provides the applicable statute of limitations allows relation back;

(B)     the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or

(C)     the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and compliant, the party to be brought in by amendment:

    (i)     received such notice of the action that it will not be prejudiced in defending on the merits; and

    (ii)    knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Relevant here are Rule 15(c)(1)(A) and 15(c)(1)(C). The court elects to discuss the applicable provisions out of order.

Under Rule 15(c)(1)(C) "an amendment that changes the party against whom a claim is asserted relates back to the date of the original pleading" if 1) the claim in both the original and amended complaint arise out of the "same transaction"; 2) the party to be brought in by the amendment "received notice of the action such that it will not be prejudiced in maintaining a defense to the claim"; and 3) that party "should have known that it would have originally been named a defendant 'but for a mistake concerning the identity of the proper party.'" Goodman v. Praxair, Inc., 494 F.3d 458, 467 (4th Cir. 2007) (en banc) (quoting Fed. R. Civ. P. 15(c)(1)(C)(ii)). Those requirements are designed to strike a balance between the Federal Rules, which favor resolution on

17

the merits and liberality of amendment, and the competing legislative policies embodied in statutes of limitations, which generally favor finality. See id. at 467–68. The rules allow amendment "for whatever reason" and "do[] not concern [them]sel[ves] with the amending party's particular state of mind except insofar as he made a mistake." Id. at 469.

Plaintiff cannot show proper notice for two reasons. First, the 90 day period provided by Rule 4(m) already has run and plaintiff still has no knowledge of the proper party. It follows that plaintiff will be unable to demonstrate that the proper party had notice on or before March 8, 2016, the date on which the 90-day period for service following defendants' removal to this court lapsed. Second, even if plaintiff could show that the proper party had notice, plaintiff cannot show that such notice was of the proper type. Rule 15(c)(1)(C)(ii) requires that the defendant to be added have notice "that but for a mistake, it would have been a party." Id. at 471. However, "naming Doe defendants self-evidently is no 'mistake' such that the Doe substitute has received proper notice." Id.; accord Hogan v. Fischer, 738 F.3d 509, 517–18 (2d Cir. 2013); Smith v. City of Akron, 476 F. App'x 67, 69 (6th Cir. 2012); Locklear v. Bergman &Beving AB, 457 F.3d 363, 367 (4th Cir. 2006). A "mistake" is an "'error, misconception, or misunderstanding; an erroneous belief.'" Krupski v. Costa Crociere S.p.A., 560 U.S. 538, 548 (2010) (quoting Blacks Law Dictionary 1092 (9th ed. 2009)); accord Goodman, 494 F.3d at 470–71. Plaintiff's ignorance of the proper party's identity is not an error, misconception, or misunderstanding. See Krupski, 560 U.S. at 548; see also Goodman, 494 F.3d at 471 ("The 'mistake' language . . . implies that the plaintiff in fact made a mistake."). Thus, even where plaintiff could demonstrate the proper party had notice, such notice would not be the result of a "mistake."

18

Under Rule 15(c)(1)(A), an amended complaint also may relate back when "the law that provides the applicable statute of limitations allows relation back." Fed. R. Civ. P. 15(c)(1)(A). The rule "is intended to make it clear that [Rule 15(c)] does not apply to preclude any relation back that may be permitted under the applicable limitations law." Fed. R. Civ. P. 15(c)(1) (1991), 1991 advisory committee notes.[3] "Rule 15(c)(1)(A) instructs courts . . . to look to the entire <u>body</u> of limitations law that provides the applicable statute of limitations," not "merely the limitation law's test for relation back." <u>Hogan</u>, 738 F.3d at 518. "If that law affords a more forgiving principle of relation back than the one provided in [Rule 15], it should be available to save the claim." <u>Id.</u> (internal alteration omitted). North Carolina law contains three potentially applicable grounds that would affect plaintiff's claim under Rule 15(c)(1)(A): 1) tolling for John Doe complaints, under N.C. Gen. Stat. § 1–166, 2) equitable tolling, and 3) relation back under North Carolina Rule of Civil Procedure 15. However, on the facts of this case, none of these doctrines could save plaintiff's complaint.

As previously explained, neither N.C. Gen. Stat. § 1–166 nor equitable tolling offer plaintiff any relief. <u>See, e.g.</u>, <u>Jordan</u>, 125 N.C. App. at 720 ("[Equitable tolling applies where a party] has been induced by another's acts to believe that certain facts exist, and that party 'rightfully relies and acts upon that belief to his detriment.'") (quoting <u>Thompson</u>, 299 N.C. at 487); <u>Huggard</u>, 102 N.C. App. at 775 (use of a John Doe defendant does not toll the statute of limitations). This leaves as plaintiff's lone hope North Carolina Rule of Civil Procedure 15(c). In its entirety, that rule provides:

> A claim asserted in an amended pleading is deemed to have been interposed at the time the claim in the original pleading was interposed, unless the original pleading

---

[3] Rule 15(c)(1) was renumbered 15(c)(1)(A) with no change in substance as part of the 2007 amendments to the rule.

> does not give notice of the transactions, occurrences, or series of transactions or occurrences, to be proved pursuant to the amended pleading.

N.C. R. Civ. P. 15(c). This provision "unlike the other sections of [North Carolina] Rule [15] and the rules in general . . . is not based on the federal counterpart," but rather "is drawn from the New York Civil Practice Law and Rules." Crossman v. Moore, 341 N.C. 185, 187 (1995).

North Carolina Rule 15(c) permits the relation back of amendment in fewer cases than its federal counterpart. In particular, North Carolina Rule 15(c) bars the addition of new parties. See State ex rel. Cooper v. Ridgeway Brands Mfg. LLC, 362 N.C. 431, 437–38 (2008). Rather, the rule merely allows the plaintiff to correct "misnomers." Liss v. Seamark Foods, 147 N.C. App. 281, 283 (2001) (citing Piland v. Hertford Cty. Bd. of Comm'rs, 141 N.C. App. 293, 299 (2000)); see also Treadway v. Diez, 209 N.C. App. 152, 157 (Jackson, J., dissenting), dissent adopted as opinion of the court, 365 N.C. 289 (2011) (holding that substituting the local sheriff as defendant in place of the sheriff's department was the addition of a "new" party and thus did not relate back); Burcl, 306 N.C. at 225 n.7 (suggesting amendment following use of John Doe defendant not intended to circumvent statute of limitations). A "misnomer" is "technical in nature" and is defined as a "[m]istake in name; giving incorrect name to person in accusation, indictment, pleading, deed or other instrument." Liss, 147 N.C. App. at 285 (citing Black's Law Dictionary, 1000 (6th ed. 1990)) (alteration in original); accord Pugliese v. Paneorama Italian Bakery Corp., 664 N.Y.S.2d 602, 603 (N.Y. App. Div. 1997) (interpreting New York rule upon which North Carolina Rule 15(c) is based). The use of a fictitious name is not a mistake in that plaintiff did not name an "incorrect" party in the complaint. Rather, plaintiff does not know the correct party. Because the use of a John Doe defendant is not a mistake, an amended complaint would go beyond correcting a mere "misnomer" and would not relate back under North Carolina law. See Burcl, 306 N.C. at 225 n.7.

20

Finally, a proposed amendment, the purpose of which is to add as defendants individual police officers, would not relate back under the federally-created equitable tolling doctrine employed in some courts. See Byrd v. Abate, 964 F. Supp. 140 (S.D.N.Y. 1997); see also Archibald v. City of Hartford, 274 F.R.D. 371, 376–77 (D. Conn. 2011) (collecting cases). In Byrd, the court held that a proposed amendment to a John Doe complaint was timely, even where the statute of limitations had run, because the defendant's counsel "failed to identify the [John Doe] defendant despite [the plaintiff's] [timely] requests for that information." Byrd, 964 F. Supp. at 146. The court implicitly tolled the statute of limitations because defense counsel had delayed and thus had prevented plaintiff from timely amending his John Doe complaint. In particular, the court reasoned that the amendment was timely because the plaintiff had made diligent efforts to obtain the John Doe defendant's true identity, "information uniquely within the knowledge of [defense counsel]." Id.

Assuming, without deciding, that Byrd's tolling rule could apply to any future amendment to plaintiff's John Doe complaint, the court concludes that it would offer plaintiff no relief. The crux of the Byrd case was the plaintiff's timely attempts to obtain discovery. There, the plaintiff filed his complaint in March of 1993, approximately 18 months before the three-year limitations period expired in October of 1994. In January of 1994, the plaintiff's counsel requested the identity of the John Doe defendant. Id. at 145. However, through a series of procedural tactics, defense counsel kept secret that information until January 1995, almost 3 months after the statute of limitations had run. By contrast, plaintiff filed this case approximately one week before the statute of limitations ran. There is no indication that he requested discovery from defendants within that week. In fact, plaintiff's first request for discovery appears to have come embedded in plaintiff's response to

21

defendant's motion to dismiss, filed February 26, 2016, almost three months after the statutes of limitations expired.

For all these reasons, plaintiff's claims against the John Doe defendants must be dismissed pursuant to Federal Rule of Civil Procedure 4(m), for failure to effect service within 90 days, and plaintiff is not entitled to an extension of time in which to serve the John Doe defendants.

## CONCLUSION

Based on the foregoing, the court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss for insufficient process, insufficient service of process, and failure to state a claim upon which relief can be granted, made pursuant to Federal Rules of Civil Procedure 12(b)(4), 12(b)(5), and 12(b)(6). (DE 21). In particular, the court orders as follows:

1) Plaintiff's claims against defendant Medlock and the John Doe defendants in their official capacities are DISMISSED as duplicative of plaintiff's claims against defendant Fayetteville;

2) Plaintiff is DIRECTED to effect service properly on defendant Fayetteville within 90 days of the date of this order;

3) Plaintiff's punitive damages claim against defendant Fayetteville is DISMISSED;

4) Plaintiff is DIRECTED to effect service properly on defendant Medlock, in his individual capacity, within 90 days of the date of this order;

5) Plaintiff's claims against the John Doe defendants in their official capacities are DISMISSED pursuant to Federal Rule of Civil Procedure 4(m).

The court DENIES plaintiff's request for a hearing, as the facts and legal contentions are adequately presented in brief and oral argument would not aid significantly in the decisional process.

SO ORDERED, this the 30th day of March, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge